The covenant sued upon must be taken as a covenant of seizin, and the question submitted to the jury was whether the defendant's intestate hadseizin in the lands sold to the plaintiff.
The plaintiff contended that one line of the boundary of the land — the only one in dispute — runs from the letter C in the plan until it strikes Springfield branch at the letter D, and thence along the branch, as it meanders, to the mouth thereof at the letter K. The defendant contended that the boundary set forth in his deed was the back line of Castage's patent, which was designated in the plan either from the letter C by H to K or from the letter C by E to K — either line leaving out the land in the bend of the branch. There are 400 acres within the lines contended for by the plaintiff, and 348 acres within those contended for by the defendant, of which it is admitted his intestate had seizin. But if he conveyed as the plaintiff contends, and was not seized of the land between C, D, E, K, and the Springfield branch, there was a breach of the covenant of seizin as to 52 acres.
There is another covenant in the deed besides the one sued on, viz., that there was not less than 387 acres conveyed by the deed. The jury may have taken that as their guide, and deducting three hundred and *Page 26 
forty-eight acres from three hundred and eighty-seven thirty-nine acres would remain; for a want of seizin, in which the jury may have given their verdict. Be that as it may, the evidence offered to the jury (37) is not made part of the case sent here. It was placed before them; they have acted upon it; the presiding Judge approved of it, and it is not for this Court to disturb their verdict.
One remark may be made (though the case does not require it): If the line C, D, E, K, was the true line, as the defendant contended, he conveyed only 348 acres; whereas, he covenanted that the lines of the deed contained 387 acres. So that he would, in case he was sued upon that covenant, be answered for thirty-nine acres; in which case he would stand precisely as he now does.
There does not appear to be any part of the Judge's charge at variance with the defendant's rights, unless the following objections are sustainable:
The Judge instructed the jury, that Jemmy's creek was a navigable stream, and that the true boundary was its water edge at low-water mark, and not the thread or middle of the channel. On this subject it becomes necessary to examine the acts of assembly on the subject of entering and surveying lands. The act of 1715 (Rev., ch. 6, sec. 3) directs surveyors in "surveying and laying out all lands that lie on navigable rivers and creeks, that they shall run a full mile in a direct course, into the woods, and each opposite line shall run parallel with the other, if it can be admitted for other persons' lines or rivers or creeks." The fourth section declares that no surveyor shall survey or lay out more than 640 acres in one tract. The act of 1777 (Rev., ch. 114, sec. 10), directs that "no survey shall be made without chain carriers, who shall actually measure the land surveyed, and such chain carriers shall be sworn to measure justly and truly; that every survey shall be bounded by natural boundaries, or right lines running to the cardinal points, unless such lines interfere with lands already granted or surveyed, or unless when the survey shall be made on any navigable water, in which last case the water shall form one side of the survey, (38) provided that nothing herein contained shall be construed to prevent any person from entering a claim to any island or islands in navigable waters, etc." By the law of England, generally speaking, waters are only considered to be navigable where the tide flows and ebbs. I think that part of the English law is not applicable to the waters and streams of this State. But few of them could be marked by such a distinction. There can be no essential difference for the purposes of navigation, whether the water be salt or fresh, or whether the tides *Page 27 
regularly flow and ebb or not. And of this opinion the legislature seems to have been, when they passed the laws above recited. When they speak of actual admeasurement by chain carriers on oath, they did not contemplate an actual admeasurement of the land forming the bed of such a stream as Jemmy's creek. When they speak of a survey containing 640 acres, made on a navigable water or creek, and the water forming one side of the survey, they did not intend that the bed of the river, to the middle of it, should be part of the survey. When they direct surveyors to run a mile into the woods from a water course, and to run each opposite line parallel with the other, so as to include six hundred and forty acres, it is preposterous to suppose that the bed of the river is to be a part of it, as there would be the required quantity without it. I have no doubt that the charge of the Judge was right, that Jemmy's creek is such a navigable stream as the before recited acts of assembly contemplated.
It may be asked of what size a creek must be to make it navigable? I answer, that in the solution of this question embarrassment may be encountered; but when it is necessary to give it, we will do it as well as we can. The decision of this case does not call for it. Neither is it necessary in this case to inquire, what are rights of the proprietors of lands on navigable waters, to the thread or middle of the stream. Such inquiry is not called for, and, at best, would be only speculative.
Secondly, when the Judge instructed the jury that an adverse possession of the land sold, at the time of the sale, would be a (39) breach of the coverant of seizin, I understand him to mean that kind of adverse possession which only could amount to a breach, viz., an adverse possession under a color of title.
Thirdly, when he directed the jury to give the value of the land at the date of the covenant, if he meant the value of the land without regard to the purchase money, it was contrary to the opinion of the Court in the case of Phillips v. Smith, 4 N.C. 87, and Hoodenpyle v. McDowell, 4 N.C. 872. In those cases the purchase money, with interest, was established as the rule of damages in case of eviction.
However, that cannot be a ground of objection here, because the jury allowed the amount of the purchase money, with interest, in assessing damages. And it is thus proved; the land stipulated to be sold was 387 acres, for which $7,740 was given — that is $20 per acre. The jury valued the 39 acres of which the defendant had not seizin, at $780, with interest, which was $20 per acre.
Fourthly, the Judge further directed the jury that if the plaintiff, availing himself of the defendant's deed, had continued possession *Page 28 
under it for 7 years, and had by that means acquired a valid and indefeasible title, they should give only nominal damages. To this part of the charge no objection is taken. Whether the fact was so proved or not this Court has no means of ascertaining.
I therefore think there was no misdirection given the jury as to the facts on which they have found their verdict, and that the rule for a new trial should be discharged.
PER CURIAM. No Error.
Cited: Dowd v. Faucett, 15 N.C. 94; Cowan v. Silliman, Ib. 47;Williams v. Buchanan, 23 N.C. 40; S. v. Benbury, 25 N.C. 282; Collinsv. Benbury, 27 N.C. 128; Fagan v. Armistead, 33 N.C. 435; S. v. Dibble,49 N.C. 110; S. v. Glenn, 52 N.C. 325; Price v. Deal,, 90 N.C. 294;Hodges v. Williams, 95 N.C. 334; Britton v. Ruffin, 123 N.C. 70; S. v.Baum, 128 N.C. 605; S. v. Twiford, 136 N.C. 606; Wall v. Wall, 142 N.C. 389.
(40)